UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

C&A CARBONE, INC., SCRUFFY CARTING, INC.,
PROVENZA CONTRACTING, INC., MR. J. JR.
EXCAVATING, INC., and MICHAEL RICKLI, JR.,

       Plaintiffs,

  -against-

THE COUNTY OF ROCKLAND, ROCKLAND
COUNTY SOLID WASTE MANAGEMENT
AUTHORITY, C. SCOTT VANDERHOEF,
individually and as Rockland County Executive,
and CHRISTOPHER P. ST. LAWRENCE,
individually and as Chairman of the Rockland
County Solid Waste Management Authority,

       Defendants.

------------------------------------------------------------------X

08 CIV. 6459

CIVIL ACTION NO.

COMPLAINT AND
JURY DEMAND

**JUDGE KARAS**



  Plaintiffs, by their attorneys, FEERICK LYNCH MacCARTNEY, PLLC, as and for their Complaint against the Defendants, allege as follows:

<u>NATURE OF THE ACTION</u>

  1. This is an action to declare illegal and/or unconstitutional the application of the Rockland County Flow Control Law ("County Flow Control Law") regulating the County-wide collection and disposition of solid waste generated in Rockland County, including garbage, recyclables, construction and demolition debris, and yard waste, and prohibiting the disposal of any waste materials in any manner except as set forth in the County Flow Control Law. Said law grants power to the Rockland County Solid Waste Management Authority in excess of the authority granted by its authorizing Act, impermissibly burdens interstate commerce and represents a patent discrimination against interstate trade, constitutes a taking of Plaintiffs' property without just compensation, interferes with Plaintiffs' pre-existing contractual

rights, conflicts with existing State law and exceeds its police powers, was adopted without SEQRA review, is unconstitutionally vague and overbroad, was enacted for the improper purpose of revenue generation, and violates Plaintiffs' due process and equal protection rights. By virtue of arrangements the Rockland County Solid Waste Management Authority has entered into said law impermissibly affords economic protectionism and promotes anti-competitive behavior. Said law addresses "waste" beyond that which is discarded and of no value to its owner to include waste that is disposed of, bartered, traded or sold for value. Said law will put numerous businesses and employees out of work and will impose economic hardship on various businesses, employees and homeowners who will be unable to receive value for materials and property and, further, will wrongfully increase the tax burden to Rockland County taxpayers. Plaintiffs seek an injunction to bar enforcement of the illegal and unconstitutional law and associated money damages.

## PARTIES

2.     Plaintiff MICHAEL RICKLI, JR. is a resident, owner of real property and taxpayer within the Town of Clarkstown, County of Rockland. Plaintiff generates solid waste from his residence, including recyclables, construction and demolition debris and yard waste, and there is value to Plaintiff in these materials inside the county and in the interstate market.

3.     Plaintiff PROVENZA CONTRACTING, INC. is a corporation duly organized and existing by virtue of and under the laws of the State of New York, and maintains a principal place of business at 167 Strawtown Road, New City, New York. Said Plaintiff is in the construction business within the County of Rockland, State of New York. Said Plaintiff estimates and contracts for work recognizing the benefit of bringing solid waste, recyclables, construction and demolition debris and yard waste to efficient transfer facilities that pay for the materials delivered in the cost analysis, such that there is value to Plaintiff and its customers in

these materials inside the County and in the interstate market and Plaintiff receives consideration for such value.

4.   Plaintiff MR. J. JR. EXCAVATING, INC. is a corporation, duly organized and existing by virtue of and under the laws of the State of New York, and maintains a principal place of business at 7 Beaver Court, New City, New York. Said Plaintiff is in the excavation business within the County of Rockland, State of New York. Said Plaintiff estimates and contracts for work recognizing the benefit of bringing solid waste, recyclables, construction and demolition debris, and yard waste to efficient transfer facilities that pay for the materials delivered in the cost analysis, such that there is value to Plaintiff and its customers in these materials inside the County and in the interstate market and Plaintiff receives consideration for such value.

5.   Plaintiff SCRUFFY CARTING INC. is a corporation, duly organized and existing by virtue of and under the laws of the State of New Jersey, duly authorized to do business within the State of New York, and maintains a principal place of business at 80 Liberty Street, Passaic, New Jersey. Said Plaintiff is an interstate commercial hauler and collects solid waste, recyclables, construction and demolition debris, and yard waste from within and without the County of Rockland, State of New York, and delivers these materials to transfer stations and recycling facilities that recognize the value of, *inter alia*, recyclables, construction and demolition debris, and yard waste, and receives consideration for such value.

6.   Plaintiff C&A CARBONE, INC. is a corporation, duly organized and existing by virtue of and under the laws of the State of New York, and maintains a principal place of business at 183 Western Highway, West Nyack, State of New York. Said Plaintiff is engaged in the business of processing waste, including solid waste, recyclables, construction and demolition debris, and yard waste, from inside the County of Rockland, State of New York, outside the

County of Rockland, State of New York, and from outside the State of New York. Said Plaintiff sorts and bales the materials into waste which is recyclable, such as metals, plastics, and papers, and waste which is not recyclable. Upon the separation of waste products, the recyclable waste and the non-recyclable waste are shipped to outside facilities. The recyclable waste is sold for value to various commercial enterprises located throughout the United States and Plaintiff receives consideration for such value. The non-recyclable waste is sent to landfills or other disposal sites located throughout the United States. This interstate delivery of waste products and the interstate disposal of the separated waste products has generated well in excess of $75,000.00 (the jurisdictional minimum amount in controversy for a diversity action) in revenue each year.

7.  Defendant COUNTY OF ROCKLAND (the "County") is a County within the meaning of the New York County Law, and includes all of the Towns of Stony Point, Haverstraw, Clarkstown, Orangetown and Ramapo.

8.  Defendant ROCKLAND COUNTY SOLID WASTE MANAGEMENT AUTHORITY ("RCSWMA") is a public benefit corporation, duly organized and existing by virtue of and under the Rockland County Solid Waste Authority Act, Title 13-M of Article 8 of the Public Authorities Law, Chapter 43-A of the Consolidated Laws of the State of New York, as amended, laws of the State of New York, and maintains its principal place of business at 420 Torne Valley Road, Village of Hillburn, Town of Ramapo, County of Rockland, State of New York.

9.  Defendant C. SCOTT VANDERHOEF is a resident of the County as well as the County Executive for the County of Rockland, and said Defendant has certified and approved the County Flow Control Law that is the subject of this complaint.

10. Defendant CHRISTOPHER P. ST. LAWRENCE is a resident of the County and the Chairman of the RCSWMA, and said Defendant has orchestrated the drafting and adoption of the County Flow Control Law that is the subject of this complaint, and has been charged with responsibility for its implementation.

## JURISDICTION

11. The jurisdiction of this Court is invoked under: (a) the United States Constitution Article 1, Section 8; (b) the Fifth and Fourteenth Amendments to the United States Constitution; (c) 28 U.S.C. § 1331; (d) 28 U.S.C. § 1337; (e) 28 U.S.C. § 1343; and (f) 28 U.S.C. § 1983.

## VENUE

12. Plaintiffs and Defendants have their residences, offices and/or principal places of business in the County of Rockland, State of New York, which is within the jurisdiction, or conduct business within said County, affording venue in the United States District Court for the Southern District of New York.

## BACKGROUND

13. In *C&A Carbone, Inc. v. United States*, 511 U.S. 383 (1994), the United States Supreme Court invalidated flow control legislation to a municipally-preferred local entrepreneur; namely, the Clarkstown Recycling Center, Inc. run by Joseph Miele (hereinafter "*Carbone I*").

14. For explanatory purposes, flow control is a method used by some municipalities to manage their garbage by directing the flow of garbage by ordinance to designated facilities, commonly, to waste-to-energy incinerators. While there are several types of flow control, the flow control at issue was regulatory flow control where a local law directed the garbage (i.e., waste) to a designated facility.

15. In *Carbone I*, the United States Supreme Court invalidated a town flow control ordinance, holding that the Town ordinance impermissibly discriminated in favor of the Town's

preferred local vendor in waste management services, Clarkstown Recycling Center, Inc. The Town of Clarkstown had directed by ordinance that all ordinary garbage found within the town, even imported garbage, be delivered to Clarkstown Recycling Center, Inc., a privately run transfer station, for sorting, bailing and ultimate disposal elsewhere. The Town of Clarkstown guaranteed to Clarkstown Recycling Center, Inc., the preferred local vendor, a minimum volume of waste, and thus assured to that vendor profit capable of covering the cost of construction of the transfer station, which the Town had agreed to buy back at a later date for $1. The Town's promise of waste delivery was backed by its flow control ordinance and required, among other things, that C&A Carbone, Inc. ("Carbone") deliver non-recycled waste from its recycling center to be brought to the town-designated facility, Clarkstown Recycling Center, Inc. The ordinance, in essence, created one point of exit for all garbage from the Town and placed a private toll gate, in the form of tipping charges per ton of garbage, that could operate by exacting any toll it so elected to charge.

16. In *Carbone I*, Carbone's locally generated and imported garbage was "grabbed" by the Town by requiring Carbone to deposit its non-recyclable garbage with the Town's higher-priced, preferred local vendor; namely, the Clarkstown Recycling Center, Inc. The United States Supreme Court determined that the Town's ordinance impermissibly discriminated against interstate commerce in favor of the local entrepreneur and placed an unconstitutional restriction on interstate commerce.

17. Shortly after *Carbone I*, Carbone and the Town of Clarkstown settled the damages occasioned by reason of the unconstitutional actions of the Town of Clarkstown. In the Settlement Agreement, dated June 5, 1996, the Town of Clarkstown agreed, in pertinent part, to pay Carbone $25,000 per year for 20 years (or until a road is built, at the Town's exclusive expense, providing access to Route 303 and the Carbone property), and the Town agreed to take

6

"appropriate steps to issue to Carbone such authority under its zoning ordinances as to permit Carbone to conduct the activity currently authorized to be conducted at the Town's transfer station".

18. In 2007, in a case entitled *United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. ___, 127 S. Ct. 1786 (2007), the United States Supreme Court determined that a governmental decision preferring its own public facilities does not constitute discrimination against interstate commerce, because it is not discrimination in favor of local "business".

19. In the wake of United States Supreme Court decision in *United Haulers*, on June 19, 2008, the County adopted the County Flow Control Law. The County Flow Control Law regulates waste, such as recyclables, construction and demolition debris and yard waste, and valuable commodities on the national and international market that are derived from the processing of such waste, by requiring the delivery of these materials to a RCSWMA facility or a facility so designated by RCSWMA for less than fair value.

20. In relevant part, the County Flow Control Law requires that "each Person shall provide for the separation of Solid Waste from all other types of waste and shall provide for the placement of such Solid Waste into a Dumpster Container, compactor, or other Suitable Container Curbside or other designated area for collection by a Hauler, and that "[a]ll Solid Waste placed at curbside or other designated area for collection by a hauler must be delivered to the designated facility".

21. The County Flow Control Law requires, with regard to residential recyclables, that "each person shall separate their designated recyclables from all other types of waste and shall provide for the placement of such designated recyclables into separate suitable containers designated for each type of designated recyclables" and that "[a]ll recyclables placed at curbside

for collection by a hauler must be delivered to the materials recovery facility or other designated facility."

22. The County Flow Control Law requires, with regard to construction and demolition debris, that "all construction and demolition debris that has been placed into a dumpster container for collection by a hauler must be delivered to the designated facility".

23. The County Flow Control Law requires, with regard to residential yard waste, that "each person creating their own yard waste shall provide for the separation of yard waste from all other types of waste and shall provide for the placement of such yard waste into biodegradable leaf bags at curbside for collection by a hauler, or as directed by the municipality" and that "all yard waste placed at curbside must be delivered to a designated facility".

24. The County Flow Control Law, with regard to commercial solid waste, further requires that "each commercial or industrial entity that generates solid waste shall provide for the separation of such waste from all other types of waste and shall cause the placement of such solid waste into a dumpster container, compactor, or other suitable container and the placement of such container at curbside or other designated area for collection by a hauler, and that "[a]ll such solid waste placed at curbside or other designated area for collection by a hauler must be delivered to the designated facility."

25. The County Flow Control Law, with regard to commercial recyclables, requires that "each commercial and industrial entity shall provide for the separation of designated recyclables from all other types of waste and shall provide for the placement of such designated recyclables into separate suitable containers labeled as containing recyclables and set out at curbside or other designated area for collection by a hauler" and that such recyclables "must be delivered to the materials recovery facility or other designated facility."

26. The County Flow Control Law, with regard to hauler waste and disposal requirements, requires that from "the time of placement of yard waste, solid waste, construction and demolition debris, scrap metals, and/or designated recyclables at curbside or other designated area by a person for collection by a hauler in accordance herewith, such yard waste, solid waste, construction and demolition debris, scrap metals, and designated recyclables shall be delivered to the designated facility."

27. The RCSWMA's authorizing Act, however, only grants the RCSWMA the power to, *inter alia*, "collect, receive, transport, process, dispose of, sell, store, convey, recycle, compost, combust and deal with, in any lawful manner and way, solid waste and any products or by-products thereof now or hereafter developed or discovered, including any recovered materials, compost or energy produced or generated by the operation of any solid waste management facility."

28. The RCSWMA's authorizing Act defined "solid waste" as "all putrescible and nonputrescible solid wastes, *including, but not limited to*, materials or substances which are discarded or rejected as being spent, useless, worthless, or in excess to the owners at the time of such discard or rejection, or which are being accumulated, stored, or physically, chemically, or biologically treated prior to being discarded or rejected, having served their intended use, or which are manufacturing by-produces, including, but not limited to, garbage, refuse, industrial, commercial and agricultural waste sludges from air or water pollution control facilities or water supply treatment facilities, rubbish, ashes, contained gaseous material, incinerator residue, demolition and construction debris and offal."

29. The RCSWMA's authorizing Act excluded from the definition of "solid waste" sewage and other highly diluted water carried materials or substances and those in gaseous form, special nuclear or by-product material within the meaning of the Atomic Energy Act of 1954, as

9

amended.", "waste which appears on the list or satisfies the characteristics of hazardous waste promulgated by the commissioner of environmental conservation law" and *"any scrap or other material of value held for the purpose of materials recycling other than materials designated as recyclables, pursuant to section one hundred twenty-aa of the general municipal law"* (emphasis added).

30. Section one hundred twenty-aa of the General Municipal Law, to the extent relevant, applies to solid waste that is left for collection and, as far as recyclables are concerned, requires under certain circumstances separation of recyclables by the waste management facility. In fulfillment of the provisions of section one hundred twenty-aa, a municipality may use private lands or building, open to the public, upon written consent of the owner, as a recycling center or depot for the storage of recyclable materials.

31. The County Flow Control Law gives the RCSWMA authority over all solid waste as well all recyclables, construction and demolition debris, and yard waste, including any scrap and other material of value held for the purpose of recycling including items that were not discarded or thrown away, thereby exceeding the limited authority granted to RCSWMA by its authorizing Act and prohibits use of private property for sorting and bailing if the site is not a designated facility.

32. Upon enacting the County Flow Control Law, the RCSWMA negotiated for the purchase of the Town of Clarkstown's transfer station and, concomitantly, executed a management agreement with the Town's preferred local vendor; namely, the Clarkstown Recycling Center, Inc. run by Joseph Miele. In this process, the Defendants disguise the preferred local vendor as "quasi-public", rather than a mere "private" entrepreneur. Similar contractual arrangements were struck with the Town of Haverstraw's preferred local vendor and future arrangements of a similar character may still be struck with other preferred vendors.

10

Arbitrary, but uniform, tipping rates will eventually be charged by the preferred vendors at each of the publicly owned, designated facilities to which waste shall be directed. Fee sharing arrangements with RCSWMA will return a portion of the revenue to local municipalities, while the homeowners and taxpayers will pay more than market rates for the services involved.

33. But for the County Flow Control Law, and the related agreements between RCSWMA and the County related thereto, Plaintiff C&A CARBONE, INC. could deliver and dispose of solid waste, recyclables, construction and demolition debris, and yard waste, originated or brought within the County at other facilities including out-of-state facilities, for less cost to Plaintiff and could pass the savings onto their customers in a competitive market. C&A Carbone's facility is located within economically feasible haul distances from its customers and the failure to designate C&A Carbone as an approved facility imposes an increased financial cost upon its customers. C&A Carbone adheres to industry environmental standards and is qualified by the New York State Department of Environmental Conservation as competent for the servicing of business even in routine or emergency circumstances.

34. But for the County Flow Control Law, Plaintiff SCRUFFY CARTING, INC. could haul and deliver solid waste originated or brought within the County at other facilities including out-of-state and non-designated facilities, for less cost to Plaintiff and could pass the savings onto their customers in a competitive market. The failure to designate C&A Carbone as an approved facility imposes an arbitrary cost on Plaintiff, who utilizes Plaintiff's prices and efficiencies within its business. Further, the disposal fees and tipping charges imposed on Plaintiff constitute an illegal tax, not a service charge.

35. But for the County Flow Control Law, Plaintiffs MR. J. JR. ECAVATING, INC. and PROVENZA CONTRACTING, INC. could dispose of construction and demolition debris and yard waste for less cost to Plaintiff and could pass the savings onto their customers in a

11

competitive market. The failure to designate C&A Carbone as an approved facility imposes an arbitrary cost on Plaintiff, who utilizes Plaintiff's prices and efficiencies within its business. Further, the disposal fees and tipping charges imposed on Plaintiff constitute an illegal tax, not a service charge.

36. But for the County Flow Control Law, Plaintiff MICHAEL RICKLI, JR. could dispose of recyclables, construction and demolition debris and yard waste for value.

37. Upon information and belief, the County Flow Control Law was adopted without a determination by the Defendants that the County Flow Control Law would not impact the environment, and without any review pursuant of the application pursuant to the dictates of, or compliance with, the New York State Environmental Quality Review Act ("SEQRA"), notwithstanding that the law is explicitly recognized as a Type I Action under SEQRA or, at the very least, an Unlisted Action requiring review under SEQRA.

38. Upon information and belief, the County Flow Control Law affords the RCSWMA unfettered discretion in the designation of facilities and the composition and makeup of its management. There is no bid process and no evaluation and award standards. No solicitation of expressions of interest, no requests for qualification and no requests for proposal are involved. No determination contemplates whether the facility is located within economically feasible haul distances, adheres to industry environmental standards, is qualified and competent for the servicing of business in routine or emergency circumstances.

39. By reason of the foregoing, the County Flow Control Law impermissibly burdens interstate commerce and represents a patent discrimination against interstate trade, constitutes a taking of Plaintiffs' property without just compensation, interferes with Plaintiffs' pre-existing contractual rights, conflicts with existing State law and exceeds its police powers, was adopted

without SEQRA review, is unconstitutionally vague and overbroad, was enacted for the improper purpose of revenue generation, and violates Plaintiffs' due process and equal protection rights.

## AS AND FOR A FIRST CLAIM FOR RELIEF

40. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein.

41. The Fifth and Fourteenth Amendment to the United States Constitution and Article I, Section 8, cl. 3 and the Constitution of the State of New York guarantee all citizens that they will not be deprived of their property without just compensation, due process or equal protection under law and that their right to contract and interstate commerce will not be interfered with.

42. The County Flow Control Law is illegal and unconstitutional in that (a) it grants the RCSMA power to act ultra vires; (b) constitutes an abuse of police power; (c) constitutes an impermissible constraint on interstate trade; (c) takes Plaintiff's property and contract rights without just compensation; (d) deprives Plaintiff's of property and contract rights without due process of law, (e) deprives Plaintiffs of property and contract rights without equal protection under law, (f) interferes with Plaintiff's pre-existing contractual rights, (g) constitutes a constraint on interstate commerce, and (h) was enacted for improper purposes of revenue generation and constitutes a tax, not a service charge.

43. By reason of the foregoing, Plaintiffs have been damages to date in a sum to be determined, but believed to be in excess of $75,000,000, and said damages will continue unless the actions of the Defendants are enjoined and restrained by this Court.

## AS AND FOR A SECOND CLAIM FOR RELIEF

44. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein.

45. As heretofore set forth this action is brought pursuant to §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. 1, *et seq.*, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1337 and 1343.

46. As above set forth, the relevant line of commerce of Plaintiff C&A CARBONE is the delivery of said Plaintiff's recycling center at West Nyack in the Town of Clarkstown and State of New York, certain refuse which refuse is then separated into recyclable materials and non-recyclable materials and as separated again shipped in interstate commerce. Though the major portion of the Plaintiff's business in obtaining the said refuse comes from without the State of New York, a portion comes within the State of New York. In each instance separation of the material is performed and the separated materials are forwarded to locations outside the State of New York.

47. That at all times material times mentioned in this Complaint, the Plaintiffs and Defendants were in direct competition with each other.

48. The relevant geographic market is the bringing of materials into Plaintiff C&A CARBONE's premises primarily from out of state, separation thereof and then shipping the separated products out of the State of New York. As above set forth, Plaintiff's revenue is well in excess of $75,000.00 per year and as such the Plaintiff has and continues to have a substantial impact upon interstate commerce.

49. In furtherance of the combination and conspiracy with the purpose and intent of excluding the Plaintiff from the market, destroying competition and guaranteeing a profit to themselves, the Defendants have performed the acts as previously set forth in this Complaint.

50. As above set forth, the Defendants have attempted to monopolize the relevant market of separation of waste from recyclable waste, eliminate competition inclusive of

Plaintiffs and in the manner of so doing are engaged in practices and procedures not authorized by State or Federal policy or by State or Federal legislation.

51. That as a result thereof the Plaintiff has been damaged in an amount well in excess of $75,000,000; however, said damages will continue unless the Defendants are enjoined and restrained.

### AS AND FOR A THIRD CLAIM FOR RELIEF

52. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length set forth herein.

53. At all relevant times herein, the Defendants acted under color of state law and pursuant to municipal policy, practice and procedure.

54. At all relevant times herein, the Defendants individually and in concert with each other, acted intentionally, maliciously, gross negligently and with deliberate indifference to Plaintiffs' civil rights and pursuant to a formally and/or informally adopted policy, practice and/or or procedure.

55. At all relevant times herein, the Plaintiffs had a property interest in their business, waste, recyclables, construction and demolition debris, and yard waste, and in the ability to sell these products in their original or derivative form in the interstate commerce stream. Such property, in addition to the processing of such property, is subject to the protections afforded by the Fifth and Fourteenth Amendment to the Constitution of the United States.

56. At all relevant times herein, the Defendants acted willfully, knowingly and with the specific intent to deprive the Plaintiffs of their constitutional rights and in direct contravention of the Plaintiffs' property and contractual rights and their right to carry on an interstate business.

57. At all relevant times herein, the Defendants by their acts engaged in an aggravated pattern of misuse of police power.

58. Defendants have acted, have conspired and continue to conspired, in breach of 42 U.S.C. §§ 1983 and 1985(3), to abridge the rights of Plaintiffs to Due Process and Equal Protection under law in violation of the Fourteenth Amendment to the Constitution of the United States.

59. As a direct and proximate result of said violation of Plaintiffs' constitutional rights, plaintiffs' have been or will be harmed in an amount to be determined at trial, but believed to be in excess of $75,000,000, plus attorneys' fees and expenses.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

60. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint as though set forth at length herein.

61. At all relevant times herein, none of the agencies involved in the adoption of the County Flow Control Law complied with the provisions of SEQRA (6 NYCRR § 617.3, et seq).

62. As early as possible after an agency receives an application for approval of an action governed by the provisions of SEQRA, the agency must determine whether the action is subject to SEQRA; must make a preliminary classification of an action as Type I, Type II or Unlisted; must requires the completion of a full EAF for all Type I actions; must establish a lead agency; must coordinate its review with other involved agencies; must determine the significant of any Type I or Unlisted Action in writing; and if the action may include the potential for at least one significant adverse environmental impact, it must require an EIS to be completed.

63. In order for an agency to determine whether an "action may include the potential for at least one significant adverse environmental impact, SEQRA mandates that an agency take a "hard look" at the potential impacts on the environment of such proposed action, by identifying

16

the relevant environmental impacts, thoroughly analyzing and reviewing the potential impacts, and providing a reasoned written elaboration of why the proposed action may or may not cause significant adverse environmental impacts

64. Upon information and belief, the County Flow Control Law adopted and to be implemented will have significant adverse impact on the environment, in that, among other things, it will cause a substantial adverse change in existing air quality, ground or surface water quality or quantity, traffic or noise levels; a substantial increase in solid waste production and handling within the county; a substantial increase in potential for erosion, flooding, leaching or drainage problems; the creation of a hazard to human health; the creation of a material demand for other actions that would result in one of the above consequences; changes in two or more elements of the environment, no one of which has a significant impact on the environment, but when considered together result in a substantial adverse impact on the environment.

65. In failing to undertake a SEQRA review, Defendants' actions constituted a violation of law and an abuse of discretion, and were arbitrary and capricious and such legislation was enacted contrary to law.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants as follows:

1. Granting a preliminary and permanent enjoining and restraining Defendants, their agents, servants and employees from enforcing County Flow Control Law;

2. Declaring that the adoption of the County Flow Control Law be illegal under SEQRA and/or nullifying, voiding and/or invalidating the aforesaid flow control until the requirements of SEQRA are fully met;

3. Declaring that the County Flow Control Law is null, void and/or invalid as unconstitutional, illegal and improper;

4. Awarding money damages to Plaintiffs in an amount to be determined, but believed to be in excess of $75,000,000 to compensate them for the harm and economic loss caused to them by Defendants violation of their constitutional rights, together with an award of reasonable attorneys' fees, costs and disbursements of this action;

5. Retaining jurisdiction to supervise the implementation of the court's order; and

6. Directing such other and further relief as this Court deems just and proper.

Dated: South Nyack, New York
July 18, 2008

Yours, etc.,

FEERICK LYNCH MacCARTNEY, PLLC
Attorneys for Plaintiffs
Office and Post Office Address
96 South Broadway
Post Office Box 612
South Nyack, New York 10960
Tel: (845) 353-2000

By: _____
Dennis E.A. Lynch (DL 6537)